**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ARON ACOSTA, | |
|                Plaintiff, | No. 24-cv-02490 |
|         v. | Judge John F. Kness |
| SAMUEL WILSON, | |
|                Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Officer Samuel Wilson moves for summary judgment (Dkt. 44)[1] on pro se Plaintiff Aron Acosta's Section 1983 action arising out of Plaintiff's June 2023 arrest and ensuing pretrial detention on a judicial warrant. As explained below, because the warrant carries a presumption of validity that Plaintiff has failed to rebut, and the undisputed record establishes probable cause for the issuance of that warrant, Defendant Wilson is entitled to summary judgment on the Section 1983 claim. For many of the same reasons, Defendant Wilson is also entitled to summary judgment on Plaintiff's claims arising under Section 1985 and Section 1986. Accordingly, Defendant Wilson's motion for summary judgment is granted.[2]

---

[1] Because Defendant Village of Round Lake Beach Police Department lacked its own distinct legal existence, the Court previously dismissed it from this case. (Dkt. 22.) Despite being provided the opportunity to do so (Dkt. 25), Plaintiff did not seek leave to file an amended complaint.

[2] As discussed further below, Defendant's motion to strike the Cedeno affidavit (Dkt. 71) is denied as moot, and Plaintiff's motion to amend his response (Dkt. 69) is denied as both

## I.    BACKGROUND

On June 2, 2023, Officers Samuel Wilson and Nicholas Sherman, who were both familiar with Plaintiff Aron Acosta, observed a red 2003 Mercury Mountaineer pass directly in front of their squad car. (Dkt. 46 ¶ 16.) Both Officers had a clear, unobstructed view of the driver and recognized him as Plaintiff. (*Id.* ¶ 17.) A quick records check confirmed what they already suspected: Plaintiff's driver's license had been revoked.[3] (*Id.* ¶¶ 18, 23–24.) Officers also determined that the Mountaineer was registered to another individual, Andrea Cedeno, who Plaintiff later admitted was his cousin and co-resident in 2023. (*Id.* ¶ 57.)

When the officers moved to conduct a stop, the Mountaineer abruptly turned and fled at a high speed. (*Id.* ¶ 25.) The pursuit was brief. It ended when officers terminated the chase after observing additional traffic violations. (*Id.* ¶¶ 20–27.) The squad video captures the attempted stop and the flight in real time (*Id.*)

Minutes later, officers located that same Mountaineer parked in the driveway of 1210 Beverly Drive: an address that an informant had said might be associated with Plaintiff. (Dkt. 46 ¶¶ 19, 27–29.) At the residence, one or more occupants (who communicated in translation via a Spanish-speaking officer) stated that the man who drove the red vehicle lived upstairs and was a tall, skinny Hispanic male with long

---

immaterial and untimely. Plaintiff's amended response to summary judgment (Dkt. 70) is thus stricken.

[3] Under Illinois law, the revocation of a driver's license carries more permanence than a suspension. *See* 625 ILCS 5/6-208) (a person whose driver's license has been revoked may, under certain circumstances, apply for a new license, but, contrary to a suspension, the person "shall not be entitled to have such license, permit, or privilege renewed or restored."). Any person who drives a vehicle while his driver's license is revoked (or suspended for that matter) "shall be guilty of a Class A misdemeanor." 625 ILCS 5/6-303(a).

2

hair and facial hair. (*Id.* ¶¶ 30–38.) During a canvass, officers spoke with a neighbor who produced a Ring surveillance video showing a tall, skinny male on the phone saying, "oh man they just found my truck." (*Id.* ¶¶ 40–44.)

On June 8, 2023, after officers provided sworn testimony, a state judge issued arrest warrant issued against Plaintiff for aggravated fleeing and eluding and driving while revoked. (*Id.* ¶¶ 46–49.) Plaintiff learned of the warrant and surrendered that day; he remained detained until October 2023. (*Id.* ¶¶ 50–51.)

During a deposition taken in connection with this federal case, Plaintiff admitted his license was still revoked as of June 2, the day he was allegedly spotted by officers driving with a revoked license. (Dkt. 46 ¶ 56.) Plaintiff acknowledged the officers had a "good reason" to attempt the stop. (*Id.* ¶¶ 59–60.) Plaintiff nevertheless asserted that Officer Wilson had confused him with Plaintiff's "doppelgänger."[4] (*Id.* ¶ 58.) With no related criminal charges pending, Plaintiff invoked his right against self-incrimination under the Fifth Amendment and declined to answer whether he was the driver, was present at 1210 Beverly, or was the person in the Ring video. (*Id.* ¶¶ 61–69.) Nearly a year later, the neighbor who previously answered questions for the police executed an affidavit asserting Plaintiff was not the upstairs resident. (*Id.* ¶¶ 70–71.)

Plaintiff then filed this Section 1983 action pro se on March 27, 2024, checking boxes on the form complaint for claims under Sections 1983, 1985, and 1986 and

---

[4] Merriam-Webster defines "doppelgänger" as "a ghostly counterpart of a living person." Merriam-Webster, https://www.merriam-webster.com/dictionary/doppelganger (last visited March 22, 2026).

alleging, among other things, that he was unlawfully arrested and detained (Dkt. 1.) After dismissal of the Round Lake Beach Police Department (*see* footnote 1) and the conclusion of discovery, the remaining Defendant, Officer Wilson, filed this motion for summary judgment (Dkt. 44.)

## II.   STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

4

## III.   DISCUSSION

### A.   Legal Standard for Pretrial Detention Under the Fourth Amendment

The Fourth Amendment requires that pretrial detention, whether before or after the initiation of formal process, be supported by probable cause. *See Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024); *Washington v. City of Chicago*, 98 F.4th 860, 868–69 (7th Cir. 2024). Where, as here, a neutral judge has issued an arrest warrant, the warrant and the information presented to secure it carry a presumption of validity. *Washington*, 98 F.4th at 870; *Dollard v. Whisenand*, 946 F.3d 342, 354 (7th Cir. 2019). To rebut that presumption, a plaintiff must do one of two things: show that the warrant submission was so lacking in indicia of probable cause that no reasonable officer could have believed it, or prove a *Franks*-style defect, in that the affiant knowingly or recklessly supplied false statements or material omissions necessary to the probable-cause finding. *Lee v. Harris*, 127 F.4th 666, 672 (7th Cir. 2025); *Washington*, 98 F.4th at 870 (quoting *Whitlock v. Brown*, 595 F.3d 406, 410 (7th Cir. 2010)).

Probable cause itself "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). It demands only a fair probability, not certainty, that the suspect committed an offense; and the assessment must be based on facts known to officers at the time, not the truth as later illuminated by hindsight. *See Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983); *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006); *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010). Where the undisputed facts satisfy that standard, probable cause may be decided as a matter of

5

law on summary judgment. *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997).

### B. Because Probable Cause Existed for the Warrant, Plaintiff's False Arrest Claims Fail

Measured against the Fourth Amendment's requirements, Plaintiff's pretrial-detention claim cannot stand. The undisputed record shows numerous corroborating facts that clear the Fourth Amendment's threshold, even apart from the judicial presumption of validity for the arrest warrant. To begin, Plaintiff was no stranger to Officer Wilson and Officer Sherman. Both knew his appearance from previous encounters, and on June 2, 2023, both recognized Plaintiff as the driver of a red 2003 Mercury Mountaineer as it passed directly in front of their squad car (Dkt. 46 ¶¶ 5–17.) A records check immediately confirmed what they already suspected: Plaintiff's driver's license was revoked. (*Id.* ¶¶ 18, 23–24.) As the dashcam video shows, the driver abruptly turned and fled when the officers attempted to stop the Mountaineer. (*Id.* ¶¶ 20–27.) Minutes later, officers located that same Mountaineer in the driveway of 1210 Beverly Drive: an address that an informant had said might be associated with Plaintiff. (*Id.* ¶¶ 19, 27–29.) At the residence, occupants (through a Spanish-speaking officer) stated that the man who drove the red vehicle lived there and described him as a tall, skinny Hispanic male with long hair and facial hair—a description that matches Plaintiff (Plaintiff himself admitted it must have been his "doppelgänger"). (*Id.* ¶¶ 30–38, 58.) A neighbor's Ring camera then captured a tall, skinny male saying, "oh man they just found my truck," contemporaneous with the incident. (*Id.* ¶¶ 40–44.)

6

Even apart from any presumption of regularity attached to a judicial warrant, this sequence of events—the real-time recognition of an individual by two officers; immediate confirmation of a revoked license; flight from a lawful stop; discovery of the suspect vehicle moments later at a location tied to the suspect; an on-scene witness description matching the suspect; and a contemporaneous statement on Ring video—was more than sufficient as a matter of law to establish probable cause. *Blackmon v. City of Chicago*, 700 F.3d 617, 633 (N.D. Ill. 2023) (single eyewitness identification can establish probable cause); *Moorer*, 92 F.4th at 721 (same); *Wesby*, 138 S. Ct. at 586 (totality controls).

Plaintiff's effort to avoid that conclusion proceeds on three main themes, but none has merit. Plaintiff first argues that the Ring footage is "blurry." (Dkt. 65 at 2.) Perhaps that is so, but probable cause did not depend solely on that evidence. Even if the Ring video added nothing, the remaining facts independently establish a fair probability that Plaintiff was the driver who fled. Probable cause is holistic. It does not crumble because one brick in the wall is purportedly weaker than the rest. *See Wesby*, 138 S. Ct. at 588–89.

Plaintiff next argues that Officer Wilson misstated whether Plaintiff lived in the upstairs or downstairs apartment at 1210 Beverly. (Dkt. 65 at 5.) That is another quarrel at the margins.[5] What mattered to the state judge was that, at the time the

---

[5] Plaintiff moved to amend his response for summary judgment after Defendant had already filed his reply. (Dkt. 69.) But Plaintiff had already been told that no further briefing extensions would be granted without a clear showing of extraordinary circumstances. (Dkt. 58.) Moreover, after review of the amended response, it is clear Plaintiff can point to nothing else that undercuts summary judgment in Defendant's favor. As such, Plaintiff's motion to amend his response (Dkt. 69) is denied, and the amended response itself (Dkt. 70) is stricken.

warrant was issued, residents at 1210 Beverly identified the driver and resident of the red Mountaineer by physical traits that match Plaintiff. (Dkt. 46 ¶¶ 34–38.) Indeed, neither resident even knew Plaintiff's name at the time. (*Id.*) Later clarifications, recantations, or nuance about which floor someone occupied thus cannot retroactively nullify the probable cause that existed at the time the warrant was issued. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). Nor do minor inconsistencies in description negate probable cause; such imperfections are as common as they are legally inconsequential. *See Lee*, 127 F.4th at 674.

Plaintiff contends that Defendant Officer Wilson presented fabricated evidence to acquire the warrant (Dkt. 65 at 13), but Plaintiff identifies no false statement, much less a knowingly false or recklessly made one, presented to the issuing judge and necessary to the probable-cause determination. *See Washington*, 98 F.4th at 870 (adopting the *Franks* standard). On the contrary, Plaintiff's own deposition testimony undercuts any fabrication theory: Plaintiff conceded his license was revoked, acknowledged the officers had a "good reason" to attempt the stop, and characterized the episode as a mistaken identity of his "doppelgänger." (Dkt. 46 ¶¶ 56, 58–60.) It is reasonableness, not omniscience, that the Fourth Amendment requires. *Carmichael*, 605 F.3d at 457. A reasonable mistake about identity, especially where officers already know the suspect, observe him at close range, and encounter multiple corroborating facts, does not transmute probable cause into unconstitutional pretrial detention. *See Hill v. California*, 401 U.S. 797, 802–04 (1971); *Torry v. City of*

*Chicago*, 932 F.3d 579, 588 (7th Cir. 2019).

Plaintiff's litigation posture further weakens his claim. Before being deposed in this case, the criminal charges against Plaintiff were dropped pursuant to a plea bargain. (Dkt. 61 ¶¶ 52–54.) With no related criminal charges pending, Plaintiff asserted his right against self-incrimination and declined to answer whether he was the driver, was present at 1210 Beverly, or was the person in the Ring video (Dkt. 46 ¶¶ 61–69.) In a civil case, courts may draw adverse inferences from such invocations when, as here, independent evidence strongly supports the movant. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 n.4 (7th Cir. 1995). Those inferences, layered atop the robust record, leave no genuine dispute material to the probable-cause question.

Nor was Officer Wilson required to chase every exculpatory lead or run down every possible alibi once probable cause existed. Law enforcement personnel have no freestanding duty under the Fourth Amendment to continue investigating once probable cause to search or arrest has been established. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 744 (7th Cir. 2003); *Lee*, 127 F.4th at 673–74. As such, Plaintiff's Cedeno affidavit,[6] even if taken as true, is immaterial as to probable cause. A late-proffered affidavit that suggests the car was reported stolen a day after the alleged events does not retroactively negate the probable cause established at the

---

[6] Plaintiff filed this previously undisclosed third-party affidavit six-months after the close of discovery and two months after Defendant filed summary judgment. (Dkt. 72 at 2–3.) That alone is a sufficient basis to disregard the affidavit. *Steffak v. Client Services, Inc.*, 948 F.3d 761, 768 (7th Cir 2020).

time of the incident. (Dkt. 62 at 4.)[7]

In sum, Plaintiff's unlawful pretrial detention claim improperly asks the Court to second-guess a warrant judge's determination on a record with ample corroboration. Plaintiff has not shown that the warrant was procured with knowing or reckless falsehoods or that the showing was so utterly bare that no reasonable officer could believe probable cause existed. *Washington*, 98 F.4th at 870. Because the judicially issued warrant's presumption of validity stands unrebutted, and because the totality of undisputed facts establishes probable cause as a matter of law, Defendant is entitled to summary judgment on the Fourth Amendment pretrial-detention claim. *Potts*, 121 F.3d at 1112.

### C.     Plaintiff's Additional Claims Also Fail

Although Plaintiff's pro se complaint also cited 42 U.S.C. § 1985 and 42 U.S.C. § 1986, Plaintiff pleaded no facts supporting a Section 1985(3) conspiracy or a Section 1986 claim. Plaintiff instead asserted for the first time (in his response to summary judgment) a Section 1983 conspiracy claim. (Dkt. 65 at 12–14.) On summary judgment, Plaintiff has produced no record evidence (only speculation) to establish a nefarious meeting of the minds. (Dkt. 65 at 12–14.) Nor could he: having found no underlying constitutional injury (*see infra* Section III.B) Plaintiff's conspiracy claim must also fail. *Coleman v. City of Peoria*, 925 F.3d 336, 351–52 (7th Cir. 2019). And because Plaintiff's Section 1986 claim is derivative of his Section 1985 claim, it too necessarily fails. *Hicks v. Resol. Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).

---

[7] Defendant's motion to strike the Cedeno affidavit (Dkt. 71) is therefore denied as moot.

10

Accordingly, Defendant is entitled to summary judgment on the Section 1985 and Section 1986 claims.

A final point: courts typically do not consider new claims raised for the first time in a summary-judgment response. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Plaintiff's opposition advances, for the first time, claims under *Brady* and for suppression of evidence, spoliation as a standalone claim, fabrication-of-evidence due process, an expanded *Monell* theory, and malicious prosecution. *See generally* (Dkt. 65.) None of those claims was pleaded, and none should be entertained now. Properly cabined to the pleaded Fourth Amendment unlawful pretrial-detention theory and the associated conspiracy claims, Plaintiff's case fails for the reasons stated in this opinion.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 44) is granted. Defendant's motion to strike the Cedeno affidavit (Dkt. 71) is denied as moot. Plaintiff's motion to amend his response (Dkt. 69) is denied. Plaintiff's amended response (Dkt. 70) is stricken.

SO ORDERED in No. 24-cv-02490.

Date: March 23, 2026

_____
JOHN F. KNESS
United States District Judge

11